Our third case for argument this morning is Old Ben Coal Company v. Office of Workers' Compensation Programs. I call this case Old Ben Coal v. OWCP because that's how it's titled. But Old Ben Coal has not existed for 19 years, and litigation is supposed to be in the name of the real party in interest. So who do you represent? Good morning, Judge Easterbrook, and thank you for that question. That very question is subject to a lot of controversy, and it is described in some detail in the response brief offered by my friend Mr. Goldberg. But who you represent is something you should know best. Yes, Judge. We represent, among other folks, we represent Old Ben. Old Ben doesn't exist. It does not exist. We represent the surety that the Department of Labor has named as supposedly being responsible for this case. That is a surety bond that was issued and is now held by BP. Could you try again, please? That is a surety bond that was issued by a company that was ultimately acquired by BP. So that is who's paying my bills today. That is whom I represent. Whether that surety bond's validity is in effect and is enforceable by the Department of Labor is a question beyond the controversy this morning here, but it is a very fair question. But I'd like to focus instead, if I may. I don't think we can enter a judgment in this case until we know who the parties to the judgment are. I don't think something that has not existed for 19 years is an appropriate subject of relief in a court. State law largely provides that corporations' existence can continue to wind up debts for a five-year period. And you have not suggested that Old Ben was organized under state law that had a different length of time. I think you need to tell us formally and on the record who is on the hook for this judgment. Yes, Judge. The answer is if the Department of Labor's theory here is correct, it is a surety bond which remains in force, which was, after Horizons bankruptcy, ultimately assigned to BP. And that is one of the parties we represent. That is one of the parties on our disclosure. And, again, this is a fundamental principle of insurance law, that bankrupt parties' debts and responsibilities can nonetheless be discharged by contract through perpetual means or means subject to contracts. And that's what we have here, at least if the Department of Labor is to be believed here. But, again, the APA here guaranteed Old Ben and its surety the right to a fair and full adversarial testing of the record proof. Old Ben did not get that. Instead, the ALJ's discretion was directed by a guidance document that was not subject to APA formalities, but is nonetheless proven to be impervious to challenge or debate. Maybe I should put my observation differently. Within seven days, I would like you to file a motion to substitute, as the petitioner, the entity that is actually financially responsible, because the alternative is to dismiss the petition on the ground that it was filed in the name of something that does not exist. Yes, Judge. I hope you get my point. Understood, Judge Easterbrook. Thank you. The director's response to the petition before this court is, frankly, very frustrating to my clients. He focuses on a protective order that, if denied, would have prevented the reversible errors of law and fact we may be talking about later today. That protective order is, frankly, very unimportant to Old Ben's argument and to this court's job. He also focuses on training materials that offer one of but several reasons, seven, in fact, that we give for proving that the preamble's use here was binding and illegal. He doesn't even touch those other six reasons, and that's a big problem because it ignores completely at least four API violations that we've identified, and it's especially problematic. Mr. Pusateri, as you get going and mindful of time here, we're reviewing the ALJ's opinion. Yes, Judge. Are we kind of looking through the board's decision? There is case law that says that this court's job is to review the ALJ's decision, not the board's decision. And is that, in other contexts, that is true unless the board materially modifies or supplements or changes the ALJ's decision? Is that the way it works in this area? Actually, no, Judge. I think under all circumstances, the ALJ's decision is what the court has to focus on and rely upon. And in this case, there are both questions of law and fact that have to be addressed. So our focus should be on the ALJ, not the board in any way? Yes, Judge, although I don't think the exercise is that different because, again, there are at least four APA violations, all of which the board implicitly— Here's the reason why I think it might be different. I understand the argument you're making about the ALJ's reliance on the preamble, and I'm sure you're going to get to that. But I don't see the board doing a whole lot of discussion about the preamble. I agree with that. So if we were to focus on the board, it would largely seem to knock your point out. I disagree with that, Judge, because the board relied exclusively on the burden of proof here, which is substantial evidence. The board basically cited the ALJ's decision, shrugged its shoulders, and said good enough. That's supported by substantial evidence. But respectfully, it's not, and it's not supported by substantial evidence because the ALJ's decision here, among many other things, including the Knudsen problem, which we can discuss if you'd like, though I think it's pretty cut and dry. What the ALJ did here is he cited a non-rule. He cited the preamble, and he gave it the force and effect of a rule, and it is not a rule. And not only that, he took the preamble and he cited it for things that it is wholly silent on. And not only that, he cited it for things that it is wholly silent on in a manner that preordained a result. And that is, in fact, the case here because what happened in the case below is that this is a gentleman who had cigarette smoke-induced emphysema. The regulations don't even mention the concept of emphysema. The preamble talks about emphysema in a very general respect. It talks about the fact that some forms of emphysema can occur through similar mechanisms, and it cites a medical study called ROM for that proposition. But ROM does not endorse what the ALJ found here. In this case, we had two board-certified professors of pulmonology who cited medical evidence post-dating the preamble, including as recent as 2017 in the Karamand paper. And they said in this particular case, this gentleman's diffuse emphysema, which was confirmed radiographically and by his DLCO measurements and through the air trapping that the pulmonologists observed, this particular minor's particular form of emphysema was due solely to cigarette smoking. And what expert are you relying upon, Dr. Rosenberg? Dr. Rosenberg was the principal expert who talked about that, though Dr. Tudor did as well. But Dr. Rosenberg talked about that, and he gave a myriad of reasons, at least four different reasons. And are you focused on his 2020 opinion? I'm sorry. Dr. Rosenberg's latest opinion in this file was in 2016, I believe, EX-7. Okay. I thought there was a 20—I'm confused about that with Dr. Rosenberg. I thought Dr. Rosenberg gave three opinions, 2015, 2016, and 2020. You might be right. Okay. And what I'm trying to figure out is what's in the record. 2015 and 2016 seems to be in the record. 2020 does not seem to be. Are you relying upon 2020 for anything? To the extent that it's not in the record, Judge, no, certainly not. But we have opinions. Well, is it? You're going to know better than I. I can't see that it's in the record, but, I mean, you all litigated this. Again, I believe Dr. Rosenberg did give three opinions. One was from 2015. One was from 2016. Right. And the reason I'm not—this is—I'm not trying to, you know, be pedantic or give you a quiz or anything. In 2015 and 2016, he opined that Mr. McLean is completely disabled, totally disabled. But then in 2020, he reached a different conclusion. And you think, okay, well, hold on. That could be significant. He reached a different conclusion in 2020, but I can't tell if 2020 is in the record or not. Judge, again, I believe what Dr. Rosenberg cited was the 2016 pulmonary function studies, which extrapolated for the gentleman's age revealed—and even when not extrapolated for the gentleman's age— revealed that he had no disabling pulmonary condition. So as you're standing there right now, in your mind, do you think 2016 is what you're relying upon? Judge, I can revisit that issue and rebuttal when I have the record in front of me. But I think the answer is—now, Dr. Tudor also offered rationales that explained why this gentleman's specific form of emphysema was unrelated to coal dust. And that is, in fact, the key issue here because the preamble was cited for things that it is wholly silent on. There's ample authority for that proposition. And, in fact, I encourage this Court to look at the cases where the preamble has been cited positively because in none of those cases, Judge, was the preamble outcome determinative. It was not necessary to the resolution of those cases. My friend, Mr. Goldberg, references some of those cases in the opening statement of his brief at pages 8 and 9. And, in fact, in each of those cases, it was the regulations themselves that were outcome determinative. The doctors who were discredited with incidental citations to the preamble in those cases rendered opinions that were inconsistent with the regulations, not the preamble. The regulations, of course, were subject to notice and comment rulemaking. The preamble was not. And those specifically dealt with citing clinical pneumoconiosis to rule out legal pneumoconiosis. Well, the regulations say you can't do that. There were opinions that said explicitly that legal pneumoconiosis is never latent and progressive. The regulations say otherwise. And so I urge the Court to take a close look at those cases because, again, they do not stand for what happened below. They do not endorse what happened below. And, again, we know that the preamble's use here was binding, Judge. We gave several different reasons for that, but I'd like to start with something very compelling. And that is in Young v. Bounty Mining, cited on pages 13 and 14 of our reply. The director himself urged a remand solely because the agency did not rely, the agency ALJ, did not cite the preamble. And so what we see here is that not only does the director here not defend the preamble's use, but he is endorsing and vigorously, consistently, and successfully requiring its use in cases every single day. Young is but one example. The Shepard case, which we cited as Rule 28 authority, is another example. In that case, the preamble was used to nullify three opinions offered by board-certified pulmonologists with 130 combined years' experience. And, instead, the judge said, sorry, I find that to be inconsistent with the preamble, and I'm ruling in favor of the claimant. Those pulmonologists' opinions, by the way, like the opinions considered below, did in no way conflicted with the regulations, and, frankly, in no way conflicted with the preamble. Again, when we're talking about different forms of emphysema, Dr. Rosenberg and Dr. Tudor explained that different forms of emphysema, cigarette-smoking emphysema, is a diffuse form of emphysema. This gentleman did not have diffuse emphysema. But the ALJ here said, I discredit his opinion because certain forms of emphysema are, the mechanisms of those are indistinguishable. And, specifically, he cited the preamble. And he cited the preamble at pages 42 and 43, which cite the ROM study, which focused on focal emphysema. This gentleman did not have focal emphysema. And so what we have here is the preamble being cited for things it simply does not say, leading to wholly irrational analysis. And that type of analysis mattered to the Allentown MAC Court. Allentown MAC cited three examples where they came to question the agency's decision-making and suggested that a policy was, in fact, being treated as a rule. And here we have all three of those. This gentleman, the ALJ, followed his own historical practice of citing the preamble wherever the question of the etiologies of cigarette-smoking and coal-dust-induced COPD were at issue. He offered wholly irrational analysis, as I described, by citing the preamble for things it is wholly silent on. He evinced a standardless approach, promising that we could archive the document, but finding that no proof, no matter how significant, could do that, and failing to explain what it might take to archive this document. And that's, I think, an especially important point here, because if adjudicators are the ones who are required to look at the medical evidence and say, well, to me, a smoking study is or isn't good enough, it isn't groundbreaking enough to challenge the preamble's conclusions, then what we're left here with is precisely what Judge Easterbrook thought was a problem in the Ziegler case, which is you have an agency that is relying upon things that simply don't have the statistical power to support their ultimate conclusions. And here we have more examples. Again, Young is an example of something that was absent in Allentown Act, where we have the agency actually insisting upon its findings. The judge below confused the preamble with the regulations, which themselves were subject to notice and comment rulemaking. And he justified that by the Miller case, which talked about legislative facts. Those training materials talk about the preamble as containing legislative facts. It does not. Legislative facts, by those definitions, are facts that are so uncertain, that are so beyond debate that they need not even be proven in a court of law. One of the legislative facts that the training material cites is the fact that emphysema and coal dust diffused, excuse me, coal dust and cigarette smoking induced emphysema. Thank you, counsel. Mr. Goldberg. Thank you, yes. May it please the court, I'm representing the Director, Office of Workers' Compensation Programs. I'd like to clear up some matters first. The importance of the board decision here is that Old Ben, or whatever name you'd like to use for them, did not raise the protective order or the training slides as issues before them. The Blacklin Benefits Act. Of course, if we completely ignore the board's decision, then presumably it's never necessary to exhaust any issue before the board. Do you agree with Mr. Pucetary that we just ignore the board? No. Because the regulations implementing the Blacklin Act have a regulatory issue exhaustion system. And this court has said that it will not consider issues that were not raised below. These were not raised before the board. They are forfeited. So, would you tell us why you disagree with Mr. Pucetary's contention that the court should pay attention to the ALJ and ignore the board? Again, because the regulatory issue exhaustion regime says... I don't understand how that works if we ignore the board. Right? It's like saying, suppose a regulation says before you can get judicial review of some decision, you have to write a letter to the editor of the New York Times. Even though the New York Times is not in the decision tree. Regulation says that. Would we pay any attention to it? I think the answer is no. Right? So, what is it? We're going to have to get this in order to figure out whether there's a real exhaustion requirement. What is the source of the disagreement between you and Mr. Pucetary about whose decision we are reviewing? In general, yes. We agree that the court reviews the ALJ's decision. But there are also legal issues or legal holdings the board might make that the court... Is there something that we should go and look at? Some statute, some regulation about... This is a question about the relative authority of two entities within the Department of Labor. That could be settled by statute or maybe by regulation. What do you want us to look at? Well, I suggest first looking at your own decision and Freeman, you... No. Look, I asked for a statute or a regulation. No, there is not a statute. The Black Lung Act and the implementing regulations do not address forfeiture as it concerns the Court of Appeals. This appellate court. So, the reason I raise this, and I think Judge Easterbrook's following, I can't figure... As best I can tell, the practice around the country, the custom and practice is to review the ALJ's opinion. And then that causes me to wonder, what's the point of the board's review? Is it not entitled to any weight at all? And it matters to me on this preamble issue. That's why I think it's... We're not asking it just to, you know, have an academic moot court. Of course. Well, again... Are you directing a focus on the ALJ, ignore the board? Is that what you're telling us? No, I am not telling you to ignore the board because the forfeiture argument hinges on their failure to raise these arguments before the board... See, now you're talking about forfeiture in a particular case. Judge Easterbrook is trying... What we're trying to get at is, across all these cases, should we focus on the ALJ's opinion or on the board's opinion or some combination? And what guides us? Generally, the board. But in some issues, the board's holding should be reviewed by the court. And in this case, the fact that these two issues were not raised to the board... I don't know why you're talking about this case. We're trying to get you to step outside of this case. I'm not talking about training slides or protective orders. I understand. Generally, the court will review the ALJ's findings. The Fourth Circuit views it differently. I know we're not there. But you... Well, if we write an opinion, what should we do? And what's the source of what we should do? Just lawyers in the courtroom saying, do that? Again, the source here would be the act and the regulations. We would review the ALJ... That's what I asked you to point to, and you aren't doing that. It's obvious that neither side is prepared to discuss this. We will give the parties 14 days after argument to file supplemental briefs addressing two questions. One is, who is the real party in interest? And two, whose decision is under review and why? And not in this case. This is a question about statutes and regulations. Okay? Okay. So here, can I just follow up? Not with respect to the letter you all have to write, okay? What really throws me off about your brief is you say, very declaratively, the Director takes no position on Old Ben's challenges to the wane of the medical evidence. Right. Are you... So here's my question. Are you defending the ALJ's decision, or are you not? Regarding entitlement, we didn't take a position. We thought mistakenly that Mr. McClain's attorney would address that issue. Yep. That was our error. The other reason... It's not your error. I do think we have some precedent saying that the Director really does not have any interest in the personal interest of the claimant who should show up and defend. Right. Our interest is making sure the act is administered properly. There have been questions in some of these cases why the Director is even a proper party. Yeah. We're a statutory party. I understand that, but that's not the same as saying a proper party to defend. So the reason we're making this observation, of course, is because if you're not, maybe appropriately so, not taking a position on the evaluation and the wane of evidence, it's a non-adversarial presentation. Well, the other reason we didn't take an issue on the question of entitlement, because like you, we are unsure if Dr. Rosenberg's third opinion is in the record. To be clear, his second opinion in 2016, he did diagnose the minor as totally disabled. In the third opinion, he changed his mind, although oddly based on the same evidence as in his second opinion. It just doesn't take it, because you're saying, yeah, I can't tell either. That is somewhat comforting, because I can't tell. But you're not arguing against Mr. Pusateri on this, because you're not even challenging the wane of the evidence. No, because we don't know whether the ALJ reviewed all the evidence. For that reason, we think remand would be appropriate. We don't get many of these. Is this the way this works around the country? That company counsel comes in, the Department of Labor comes in, and the department says, we don't have any position at all on the facts or the wane, and then there's nobody at the table that's going to challenge the other side? These are non-adversarial appeals? Sometimes we do take an issue. It depends on the facts. It depends on the ALJ's fact-finding or interpretations of law. Certainly my experience has been in the large majority of these cases, the claimant follows a brief. Yes, generally the claimant does. We were unaware the claimant did not plan to. It's kind of like a labor board case where there's the board, the union, and the employer. We did want to correct one other point. Mr. Busateri said that in Young and Shepard, the director asked the board to force the ALJ to consider the preamble. That's inaccurate. In Young, we initially did. Then we filed a surreply apologizing for the misstatements in our initial brief, and so that the issue was whether the doctor's opinions were in agreement with the regulations and not the preamble. Mr. Goldberg, let's at least get the benefit of you being here and the expertise you have in this area. It's the proper use of the preamble. It is not a rule. It is not mandatory. An ALJ has the discretion to ignore it completely. The ALJ has the discretion to consider it, and an ALJ has the discretion to find an opinion contrary to the preamble to be more credible if it's based on a proper scientific fact. The post-preamble studies that Dr. Rosenberg relied on were found by the Fourth Circuit installer not to address coal mine employment. They only addressed the effects of smoking, and this court has held that non-diffuse emphysema can be caused or contributed to by coal mine dust exposure. These are fact-specific cases, and the ALJ has great discretion in weighing the evidence, again, supported by substantial evidence. We wanted to address the—excuse me—Mr. Kisaheri's argument raised in his reply brief that arguing against forfeiture would have been futile, but this court has held that we must show that their claim—in order to come under the futility exception, the plaintiffs must show that a certain other claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision. When you see that, they also argued before the board in this case that removal protections afforded to DOL ALJs deprive the ALJ of the constitutional authority, an issue they have never won on. It's hard to believe they would have had even less chance or equal chance there. We think the ALJ properly granted the protective order because it did not abuse his discretion. Old Ben was not substantially prejudiced because the preamble does not—cannot address post-preamble medical studies, and this was—the requested documents concerned pre-decisional internal agency discussions, and this court has affirmed the use of the preamble, for that matter, in Consolidation Call v. Director 521 F. 3rd. 723 at 726. Finally, the training materials, we think, were largely irrelevant. Not only were they forfeited, but there's no indication that the ALJ based his decisions on those slides. The slides were not binding. There's no evidence the ALJ even saw or attended these—whatever training the slides were at, and the slides were not contrary to law. These slides say that, in some cases, the source of emphysema can be based on the type and that you can't rule out— and that you should—ALJ should not credit a doctor who rules out legal pneumoconiosis based on negative x-rays, which concords with Section 720—excuse me, 718.202. And finally, contrary to Old Ben's opening brief on page 34, the slides do not say, don't trust Dr. Rosenberg. Those words simply do not appear. Unless you have questions, I will return to my seat. Thank you very much. The court directs both sides—your time has expired, Mr. Pusiteri. The court directs both sides to file, within 14 days, supplemental memoranda addressing, first, who is the real party in interest, and second, which decision is under review and why. Once those memos have been received, the case will be taken under advisement.